UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| JEFFREY F. DESLAURIERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 07-184-JAW |
| | ) | |
| MICHAEL CHERTOFF, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON MOTION TO STRIKE EXPERT DESIGNATION**

The plaintiff, Jeffrey Deslauriers, has filed a Motion to Strike Defendant's Expert Witness Regarding Age Discrimination on the grounds that the witness was not timely designated and does not have any special expertise or expert analysis to offer.  (Doc. No. 22).  The Court referred the motion for determination pursuant to 28 U.S.C. § 636(b)(1)(A).  The motion is granted, in part.  The witness is not an expert witness but a lay witness.  The designation will be allowed to stand as a tardy but harmless lay witness disclosure.  The witness is precluded from offering her opinion that there is no pattern of age-biased hiring decisions reflected in the personnel data she evaluated on behalf of the Department, but she may testify concerning the factual aspects of her investigation.

**Background**

Jeffrey Deslauriers filed a civil action against Michael Chertoff, Secretary of the United States Department of Homeland Security, alleging that the Department initially discriminated against him on the basis of age when it denied him a promotion to the position of lead border patrol agent for the Calais border station and then, after Deslauriers filed a charge of

discrimination, retaliated against him by denying him a detail to Washington, D.C. During the course of discovery the parties indicated to one another their intentions to designate expert witnesses. Evidently, there had been discussion between the parties to the effect that Deslauriers would utilize an expert to analyze a substantial amount (over 5000 pages) of data consisting of confidential personnel records in the hope of presenting, as a component of his case, evidence that the denial of his requested promotion was consistent with a broader pattern of age discrimination practiced within the Department. The hitch was that the data was not disclosed prior to the deadline for the plaintiff's expert witness designation, in part because of the need for a confidentiality order. Nevertheless, counsel agreed that they would seek a consent extension to the deadlines for expert designations so that Deslauriers could pursue that investigation with the aid of an expert, should he choose to do so after the data was produced. In addition to the delay related to the production of the confidential data, the parties were also preparing for a judicial settlement conference. They both acknowledged to one another that there would be no need to designate experts (or ask the Court for an extension) if they achieved a settlement. As it turned out, the settlement conference and subsequent settlement negotiations were unsuccessful and both parties' expert designation deadlines expired. Nevertheless, the parties continued to discuss how to address the scheduling order to enable expert witnesses to digest the data produced under the confidentiality order. Eventually, Deslauriers decided not to retain an expert, but the Department, meanwhile, had identified a witness whom it believed would be capable of rebutting the contention that the Department engaged in a pattern or practice of age discrimination. Deslauriers indicated that he would not consent to an extension of the discovery deadlines in order to accommodate the Department's desire to tardily designate its expert witness.

On November 3, 2008, I held a discovery conference to address the matter. I granted the Department leave to serve Deslauriers with its complete expert designation by November 13, 2008, and indicated that Deslauriers could then address its challenge to the designation in writing by November 20, 2008. (Doc. No. 21.) Deslauriers chose to challenge the designation with the instant motion to strike. (Doc. No. 22.)

The witness in question is Dr. Julia A. Leaman. She identifies herself as a Supervisory Personnel Research Psychologist, GS-0180-15, in the Personnel Research and Assessment Division, Office of Human Resources Management, U.S. Customs and Border Protection, Department of Homeland Security. Dr. Leaman has a Ph.D. in Industrial/Organizational Psychology, which she obtained from George Washington University. (Expert Report at 2, Doc. No. 23-2.) According to her report, the Department requested of Dr. Leaman that she provide her opinion on:

(1) whether there was a pattern of age discrimination in the selection of Lead Border Patrol Agent positions in Houlton Sector in 2005 when selections were made a six stations; and

(2) whether there was a pattern of age discrimination in all selections in Houlton Sector from September 2002 through March 2006.

(Id. at 3.) Dr. Leaman reviewed the investigative file and, as explained further in the following discussion, has concluded that there was no pattern of age discrimination. (Id.)

### Discussion

Deslauriers contends that the Department's expert witness designation should be stricken both as a discovery sanction and because the witness's testimony is not based on any application of expert knowledge, principles or methodologies. For the reasons that follow, I conclude that

3

the "expert" testimony offered by the Department is really lay witness testimony. I further conclude that the late disclosure of this lay witness is harmless for purposes of Rule 37(c)(1) and that the Department may belatedly add this witness to its witness list. The proffered testimony is restricted slightly in order to preclude inappropriate lay witness opinion testimony.

"Rule 37(c)(1) calls for the imposition of an exclusionary sanction against parties who, 'without substantial justification,' fail to comply with the discovery rules, unless they are able to show their failure 'is harmless.'" Downeast Ventures, LTD v. Wash. County, 450 F. Supp. 2d 106, 111 (D. Me. 2006) (quoting Fed. R. Civ. P. 37(c)(1)). The Department does not actually contend that there is a substantial justification for its noncompliance with the scheduling order. Because a substantial justification is not offered, harmlessness is the hurdle it must clear in order to preserve this testimony. The purpose of the inquiry into harmlessness is "to avoid unduly harsh penalties in a variety of situations," such as where there is an acceptable reason for late disclosure and no material prejudice or unfair surprise is imposed on the opponent. Id. (quoting Fed. R. Civ. P. 37 advisory committee's notes). Based on the nature of the testimony in question I conclude that it meets the "harmless" criterion.

"It is not always easy to draw a clear distinction between lay and expert testimony." Id. at 109. In this case, however, it is apparent that the proffered witness, Dr. Julia Leaman, is a lay witness with information that would help to better understand a fact in issue. To the extent she has been designated to address the question of whether there is a pattern of age discrimination in hiring or promotion decisions made by the Department in the Houlton Sector, there is nothing in her expert report that reflects an application of expert knowledge, principles or methodologies. The Department's memorandum in opposition to the motion effectively concedes this point: "On balance, the [Department] agrees that [Dr. Leaman's] testimony is more properly characterized as

4

lay testimony since she is not 'specially retained' and her testimony is based primarily on her on-the-job qualifications."  (Dep't Opposition Mem. at 10, Doc. No. 32-2.)  The Department explains that Dr. Leaman entered the picture as a potential expert witness in rebuttal, but when Deslauriers abandoned his plan to retain an expert, the Department still wanted to proffer Dr. Leaman "to rebut already known inferences in the EEO investigative report, even though Deslauriers would forego any additional expert statistical [rebuttal] testimony."  (Id.)

The Department describes Dr. Leaman as "a human resource specialist with thirteen years of experience with Homeland Security and its predecessor agency" who reviewed "the underlying EEO Investigative file, which included tables and listings of the ages of various [Department] applications and selectees," and then compared it to personnel data maintained by the Department and "noted several errors and generated her own corrected tables based on the more accurate Human Resources data upon which she routinely relies for her DHS position."  (Dep't Opposition at 5-6.)  In effect, Dr. Leaman is a fact witness with personal knowledge gleaned from a review of the Department's personnel data and her preparation of tables that summarize the data.  From this foundation, Dr. Leaman performed two "evaluations."  The first evaluation is described by the Department as follows:

> First, with respect to the hiring patterns for the six stations in Maine, she noted that for four of the stations (Fort Fairfield, Van Buren, Jackman and Houlton), there were no candidates over 40.  At the Rangeley station, only one of the five candidates was over 40.  Finally, at the Calais station, although three of the four candidates [were] over 40, the final decision was between the two most superior candidates, Deslauriers (who was 41) and another agent (who was 36).  Although Deslauriers contends he was better qualified, Dr. Leaman's review of the corrected record of hiring in the six stations did not reveal a "pattern" of discriminatory hiring based on age.

(Dep't Opposition Mem. at 6 (quoting Expert Report at 5-7, Doc. No. 23-2).)  A review of Dr. Leaman's expert report reflects that she prepared a table to identify by name and age the

5

applicants who sought lead border patrol agent positions at the six border stations within the Houlton Sector. The table reflects that at four stations there was not an applicant age 40 or over who applied for the position of lead border patrol agent.[1] The data also reflects that at one station only one of the five applicants was over 40, which, in Dr. Leaman's opinion, means that "the probability of selecting a candidate over 40 was only 1 out of 5." (Expert Report at 6.) There is obviously no expert methodology at work here. The only instance in which Dr. Leaman potentially offers an expert opinion is with respect to the Calais border station where Deslauriers works. At that station, three of four applicants were over 40 and none of the three received the position. Dr. Leaman opines that only one of the over-40 applicants was as qualified as the under-40 applicant, so there was really only a "50/50 chance . . . of selecting a candidate over 40." (Id.) As to the candidates' qualifications, she bases her opinion on her review of the candidates' resumes and application packets. Although Dr. Leaman may have specialized knowledge that would enable her to offer an expert opinion that there were only two serious candidates, including Deslauriers, that is not what the Department has offered her expert opinion for. The Department has offered Dr. Leaman's opinion exclusively to disprove the existence of a pattern of discriminatory hiring. Testimony about the relative qualifications of Deslauriers and the other candidates for the specific lead border patrol agent position that Deslauriers sought at the Calais station falls outside of that designation because it goes directly to the core claim of age discrimination, not to any claim of a "pattern" of age discrimination.

In summation, with respect to this first evaluation performed by Dr. Leaman, it is evident that she can serve as a lay witness with personal knowledge of the data in question, assuming

---

[1] At all six stations the person selected to serve as lead border patrol agent was under 40, but only two of the six stations had one or more applicants over 40.

that Deslauriers does attempt to prove a pattern of discriminatory hiring in the Houlton Sector based on this data, but she cannot render an "expert opinion" that there is no pattern of discriminatory hiring because there simply is no application of any expert principles or methodologies with respect to the identification of any pattern.

The Department describes Dr. Leaman's second evaluation as follows:

> Second, Dr. Leaman considered Deslauriers' allegation, reflected in the EEO Investigative Report, that there was a "pattern" of discriminatory age-related hiring in 106 other DHS selections. Again, Dr. Leaman corrected the errors in the EEO Investigative Report and determined that there were really only 104 selections (two were duplicates), and she corrected for 4 missing dates of birth (due to misspelled agent names). In addition, Dr. Leaman noted that 72 of the 104 selections were "transfers" from the Southern Border to the Northern Border, which were "not comparable . . . because they did not involve promotion or hiring decisions." Dr. Leaman also opined that the remaining 26 selections revealed no "pattern" of age bias because 50% of the selections were under age 40 and 50% were over age 40.

(Dep't Opposition Mem. at 6 (quoting Expert Report at 7-8).) The purpose of this evaluation is to address data asserted in the EEO investigative report that 70 percent of the selections made by Deputy Chief Patrol Agent Matthew Zetts from September 2002 through September 2006 went to individuals under age 40. The Department offers Dr. Leaman's testimony to correct the record in certain regards, most significantly by explaining that most of the data is drawn from the transfer of agents from the southern border to the northern border, which, according to Dr. Leaman, did not require Zetts to perform a hiring or promotion decision. Assuming that Deslauriers will attempt to introduce this evidence to suggest that there is a pattern of age discrimination under Zetts's administration, then Dr. Leaman's proffered testimony is clearly appropriate factual testimony designed to clarify the record. The mere fact that her testimony tends to discourage any inference of a pattern of discriminatory hiring does not mean that her testimony qualifies as expert opinion testimony. In fact, Dr. Leaman's testimony concerning her

7

second evaluation does not rely on any application of expert principles or methodologies any more than did her first evaluation.

Dr. Leaman's proffered testimony is nothing more than factual testimony drawn from her review and organization of certain Department hiring data.  The testimony will likely facilitate the presentation of this data, and clarify and correct it to some extent as well, should Deslauriers chose to introduce the data in support of his case.  Given the nature of this testimony there is no discernable prejudice or unfair surprise that would result from its admission.  I conclude that the testimony is therefore harmless for purposes of the late designation question.

The question remains whether some portion of Dr. Leaman's proffered testimony must be restricted to avoid improper expert opinion testimony at trial.  Deslauriers indicates that he "would not object to allowing [the Department] to call her as a lay witness, so long as the scope of her testimony is restricted to summarizing the information contained in the personnel documents produced in discovery."  (Reply Mem. at 6, Doc. No. 29.)  More specifically, Deslauriers objects to having Leaman opine that the data in question reflects "the absence of any discernable 'pattern' of age bias."  (Id. at 7.)  This request is granted.  The Department fails to articulate how Dr. Leaman is able to derive an opinion on the existence or nonexistence of a pattern other than through an application of common sense and ordinary deliberation.  It might be that a statistician could explain, in expert terms, why this particular sample of data cannot possibly prove that a pattern of age bias was at work in this case, but those are not the terms in which Dr. Leaman's opinion is couched.  Her opinion is merely a practical assessment of what the data reflects. Because the finder of fact is presumptively competent to perform this practical assessment on its own, Dr. Leaman's opinion is unhelpful and is therefore excludable even as a lay opinion. Fed. R. Evid. 701(b);  United States v. Scott, 270 F.3d 30, 50 (1st Cir. 2001)

(finding that lay witness comparison testimony was inadmissible for being unhelpful where the comparison "could be made as easily by the jury as by the witness"); McGowan v. Cooper Indus., 863 F.2d 1266, 1273 (6th Cir. 1988) (reasoning that lay opinions "were not helpful to the jury because they addressed matters that were equally within the competence of the jurors to understand and decide").

## Conclusion

Deslauriers's Motion to Strike Defendant's Expert Witness (Doc. No. 22) is GRANTED, IN PART.  The Department's designation of Dr. Julia Leaman will be considered a late disclosure of a lay witness whose testimony will be permitted except to the extent that she would offer an opinion on the nonexistence of a pattern of age bias.

## CERTIFICATE

Any objections to this Order shall be filed in accordance with Fed.R.Civ.P. 72.

*So Ordered.*

December 31, 2008                    /s/ Margaret J. Kravchuk
                                      U.S. Magistrate Judge